NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____
ASIA SABIR,                         :
                                    :
        Plaintiff,                  :      Civil Action No. 13-1948
                                    :
    v.                              :      **OPINION**
                                    :
CAROLYN W. COLVIN,                  :
Acting Commissioner of Social       :
Security,                           :
                                    :
        Defendant.                  :
_____

**PISANO, District Judge:**

      Presently before the Court is the Appeal of Asia Sabir ("Plaintiff") from the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her request for a Period of Disability and Disability Insurance Benefits (DIB). The Court has jurisdiction to review this matter pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), and reaches its decision without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the Court finds that the record contains substantial evidence supporting the Administrative Law Judge's ("ALJ") decision and therefore affirms the final decision of the Commissioner.

    **I. PROCEDURAL HISTORY**

      Plaintiff submitted an application for social security disability benefits on May 4, 2009, alleging disability during the period from June 1, 2006, through December 31, 2007, due to diabetes mellitus, diabetic retinopathy, and peripheral neuropathy. Tr. 47, 142-43. The Commissioner denied her claims both initially and on reconsideration. Upon Plaintiff's request,

a hearing was held before an ALJ. On February 22, 2011, the ALJ issued a written decision denying Plaintiff's claim, reasoning that Plaintiff did not have a severe impairment or combination of impairments. Tr. 47-50. Plaintiff requested review of the ALJ's decision on March 8, 2011, and subsequently submitted additional evidence and a letter brief. Tr. 18-32, 185-87. On July 10, 2012, the Appeals Council denied Plaintiff's request for review and the ALJ's decision became the final decision of the Commissioner. Subsequently, Plaintiff appealed the decision to this Court.

## II. BACKGROUND

Plaintiff was born on May 29, 1961 and has a high school education. Tr. 59-60. She lives with her husband, eleven (11) year-old son, brother, and sister-in-law. Tr. 62. Plaintiff worked as a security guard from 2005 until October 2006. Tr. 154. In this position, she was required to walk for about four (4) hours continuously each day and sit for about four (4) hours each day. Tr. 163. Plaintiff was insured through December 31, 2007. Tr. 45.

Plaintiff has a lengthy history of diabetes and saw two (2) doctors, Dr. Mian and Dr. Gandotra, over the years to monitor her blood sugar and other symptoms. On July 3, 2004, Plaintiff saw Dr. Mian to be evaluated for symptoms of numbness and paresthesia (pins and needles sensation) of both feet and legs. Tr. 195. She underwent Electromyogram (EMG) and Nerve Conduction tests, which revealed evidence of prolonged insertion and low voltage with occasional polyphasics and neuropathy, but no evidence of root compression. Tr. 196. Soon after, Dr. Gandotra referred Plaintiff for a stress echocardiogram (EKG), which found that Plaintiff had limited exercise capacity, normal heart rate and blood pressure response to exercise, no chest pain, and no arrhythmias. Tr. 460. Furthermore, Dr. Gandotra's August 2, 2004, medical records described Plaintiff's leg numbness, pins and needle sensation, and diabetic

retinopathy. Tr. 392. On May 10, 2005, Dr. Gandotra wrote that Plaintiff continued to have foot pain in the house at all times. Tr. 390. In September 2006, Dr. Gandotra then referred Plaintiff for an EGD (esophagogastroduodenoscopy), which found esophagitis at the gastroesophageal junction, gastritis in the antrum, and *H. Pylori*. Tr. 463. Plaintiff was prescribed Aciphex and no mention was made of these conditions' interference with Plaintiff's life or work. Tr. 463.

On June 8, 2006, Plaintiff had an x-ray of the right foot, which showed degenerative change at the first metatarsophalangeal joint and heel spur, but no evidence of acute fracture. Tr. 193. On August 25, 2006, Plaintiff had an MRI based on complaints of headaches, which revealed mild periventricular white matter hyperintensity. Tr. 192. In September 2006, another doctor, Dr. Yarian, performed a retinal consultation on Plaintiff and found that she had proliferative diabetic retinopathy. Tr. 365. On November 30, 2007, Dr. Gandotra again wrote that Plaintiff had pins and needle sensation, but also indicated that her vision was OK and there was no problem with her joints. Tr. 386.

Between 2007 and 2009, Plaintiff continued to see Dr. Gandotra frequently to check on her blood sugar and other symptoms, with no notable findings. On March 3, 2009, Plaintiff saw Dr. Mian, who diagnosed her with peripheral neuropathy and neuritis, peripheral vascular disease, restless leg syndrome, and diabetes mauritius. Tr. 191. In his report, Dr. Mian described that Plaintiff "had difficulty standing and walking for an extended period of time" and impaired balance, generalized weakness in lower extremities, and moderate wasting of the distal muscles. Tr. 191. While Dr. Mian indicated that "[t]he symptoms started gradually over the last few years and became progressively worse," he did not specify findings related to Plaintiff's alleged disability during the period at issue: June 1, 2006, to December 31, 2007. Tr. 190.

Similarly, two medical reports from Dr. Gandotra dated June 8, 2009, indicated that he first examined Plaintiff on August 2, 2004, but did not specify findings related to Plaintiff's alleged disability during the period at issue. Tr. 199-202. The reports detailed Plaintiff's better control of blood sugar, mild to moderate peripheral vascular disease, severe peripheral neuropathy with progressive balance problems, migraine, and laser-treated diabetic retinopathy in both eyes. Tr. 199-202. Further, they described Plaintiff's severe pain, inability to "sit comfortably more than half an hour," need for rest after standing for ten (10) to fifteen (15) minutes, numbness and pain in both legs, inability to walk for more than fifteen (15) to twenty (20) minutes, and unsteady gait. Tr. 199-203. Additionally, the reports explained that Plaintiff's pain, fatigue or other symptoms would likely frequently interfere with attention and concentration, she would likely need to take unscheduled breaks to rest at unpredictable intervals every thirty (30) minutes during an eight (8)-hour work day, and she would likely be absent more than three (3) times a month. Tr. 204-8.

On August 15, 2010, Dr. Mian completed a questionnaire indicating that he first treated Plaintiff on July 2, 2004, but again, Dr. Mian did not specify findings related to Plaintiff's alleged disability during the period at issue. Tr. 341. The questionnaire detailed that: Plaintiff could only sit for three (3) hours a day and could only stand/walk for three (3) hours a day; Plaintiff could not sit or stand/walk continuously in a work setting; Plaintiff's impairment was ongoing and was expected to last at least twelve (12) months; Plaintiff's pain, fatigue or other symptoms were severe enough to frequently interfere with attention and concentration; and Plaintiff would frequently be absent from work as a result of the impairments or treatments. Tr. 344-45.

4

In a December 20, 2010, medical report, Dr. Mian indicated that Plaintiff had been under his care since July 2, 2004, but again did not specify findings related to the period at issue. Tr. 361. Positive clinical findings in this report included: "pain and numbness in her feet and lower extremities, vascular disease, severe leg cramps, loss of manual dexterity, dizziness/lost of balance, retinopathy, headaches on and off and variable, fatigue, general malaise, vertigo, lack of sleep and stress." Tr. 361. Dr. Mian further recommended that Plaintiff not "sit or stand/walk continuously in a work setting" and indicated that Plaintiff would need a break from the workplace when she had headaches. Tr. 361.

### III. STANDARD OF REVIEW

A reviewing court must uphold the final decision of the Commissioner if it is supported by "substantial evidence." 42 U.S.C. § 405(g); 1383(c)(3); *Morales v. Apfel*, 225 F.3d 310, 316 (3d. Cir. 2000). In order for evidence to be "substantial," it must be more than a "mere scintilla," *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 220 (1938), but may be slightly less than a preponderance. *Stunkard v. Sec'y of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988). The inquiry is not whether the reviewing court would have made the same determination, but whether the Commissioner's decision was reasonable given the record before him. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).

The reviewing court must review the evidence in its entirety. *Daring v. Heckler*, 727 F.2d 64, 70 (3d. Cir. 1984). As part of this review, the court "must take into account whatever in the record fairly detracts from its weight." *Schoenwolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting *Willibanks v. Sec'y of Health and Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988)). The Commissioner has an obligation to facilitate the court's review: when the record shows conflicting evidence, the Commissioner must explain clearly his or her reasons for

5

rejecting or discrediting competent evidence. *Brewster v. Heckler*, 786 F.2d 581, 585 (3d Cir. 1986). Additionally, the reviewing court is not empowered to weigh the evidence or substitute its conclusions for those of the fact finder. *See Early v. Heckler*, 743 F.2d 1002, 1007 (3d Cir. 1984).

### A. Establishing Disability

In order to be eligible for DIB benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death which has lasted or can be expected to last for a continuous period of not less than [twelve (12)] months." 42 U.S.C. §423 (d)(1)(A). The statute also requires that an individual will be determined to be under a disability only if his or her physical and mental impairments are "of such severity that he [or she] is not only unable to do his [or her] previous work, but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423 (d)(2)(A).

Social Security regulations detail a five (5)-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520. If a finding of disability or non-disability can be made at any point in the sequential analysis, the Commissioner will not review the claim further. 20 C.F.R. § 404.1520(a)(4). First, the Commissioner must determine whether the claimant has engaged in any substantial gainful activity since the onset of the alleged disability. 20 C.F.R. § 404.1520(a)(4)(i). Second, if the claimant has not engaged in any substantial gainful activity, then the Commissioner must consider whether the claimant has a "severe impairment" or "combination of impairments" which significantly limits his or her physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii), (c). The claimant bears the burden of

establishing the first two (2) requirements of the evaluation, and failure to satisfy either automatically results in a denial of benefits. *Bowen v. Yuckert,* 482 U.S. 137, 146-47 n.5 (1987).

Third, if the claimant satisfies the first two (2) steps, then he or she must provide evidence that his or her impairment is equal to or exceeds one of those impairments listed in Appendix 1 of the regulations ("Listing of Impairments"). 20 C.F.R. § 404.1520(d). Upon such a showing, he or she is presumed to be disabled and is automatically entitled to disability benefits. *Id.* If the claimant does not have a listed impairment, the Commissioner will evaluate and make a finding about the claimant's Residual Functioning Capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4), (e).

Fourth, the Commissioner must determine whether the claimant's RFC permits him or her to perform past relevant work. 20 C.F.R. § 404.1520(e). A claimant's RFC is defined as "the most [an individual] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545. If the claimant is found to be capable of returning to his or her previous line of work, then he or she is not disabled and therefore not entitled to disability benefits. 20 C.F.R. § 404.1520(e)-(f).

Fifth, if the claimant is unable to perform the work of his or her previous job, the Commissioner must consider the RFC along with the claimant's age, education, and past work experience to determine if he or she can do other work in the national economy. 20 C.F.R. § 404.1520(g). The burden shifts to the Commissioner to demonstrate that the claimant can perform other substantial gainful work. 20 C.F.R. § 404.1520(f). If the Commissioner cannot satisfy this burden, the claimant is entitled to and will receive Social Security benefits. *Yuckert,* 482 U.S. at 146-47 n.5.

### B. Objective Medical Evidence

Under Title II of the Social Security Act, a claimant is required to provide objective medical evidence in order to prove his or her disability. 42 U.S.C. § 423(d)(5)(A). Moreover, a claimant cannot prove that he or she is disabled based exclusively on subjective symptoms. *Green v. Schweiker,* 749 F.2d 1066, 1069-70 (3d. Cir. 1984). Subjective complaints of pain, without more, do not in themselves constitute disability. *Id.* at 1069-79. In order for the claimant to be awarded benefits, he or she must provide medical findings to prove that he or she has a medically determinable impairment. 42 U.S.C. § 423(d)(1)(A).

### IV. THE ALJ'S DECISION

On January 12, 2011, a hearing was held before ALJ James Andres in Newark, New Jersey and Plaintiff testified. Tr. 45. In a written opinion dated February 22, 2011, the ALJ denied Plaintiff's claim for DIB, concluding that Plaintiff was not disabled during the time from June 1, 2006, the alleged onset date, through December 31, 2007, the last date insured. Tr. 50.

After analyzing all of the evidence in the record, the ALJ concluded that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2007. Tr. 47. The ALJ then proceeded to the five (5)-step sequential analysis pursuant to 20 C.F.R. § 404.1520. Tr. 47-50. At step one (1), the ALJ found that the Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of June 1, 2006, through her date last insured of December 31, 2007. Tr. 47. At step two (2), the ALJ determined that through December 31, 2007, Plaintiff did not have an impairment or combination of impairments that significantly limited her ability to perform basic work-related activities for twelve (12) consecutive months, and thus did not have a severe impairment or combination of impairments.

Tr. 48. Therefore, the ALJ concluded that Plaintiff was not under a disability as defined by the Social Security Act. Tr. 48. 20 C.F.R. 404.1520(c).

In performing this analysis, the ALJ considered all symptoms and all opinion evidence. Tr. 48. The crux of the ALJ's analysis focused on whether Plaintiff's pain or symptoms were credible and/or supported by the objective medical evidence and other evidence. In considering the Plaintiff's symptoms, the ALJ followed the required two (2)-step process. Tr. 48. First, the ALJ evaluated whether there were medically determinable physical or mental impairments that could reasonably be expected to cause the Plaintiff's pain or other symptoms. Tr. 48. Here, the ALJ found that the Plaintiff's medically determinable impairments of diabetes mellitus, diabetic retinopathy, and peripheral neuropathy could reasonably be expected to cause the Plaintiff's pain or other symptoms. Tr. 47-8.

Second, the ALJ evaluated the intensity, persistence, and limiting effects of Plaintiff's symptoms to determine how greatly they limited Plaintiff's functioning. Tr. 48. If statements about intensity, persistence, and limiting effects were not supported by objective medical evidence, the ALJ must have considered the entire case record in determining the statements' credibility. Tr. 48-9. Here, the ALJ found that Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms were not credible to the extent that they were inconsistent with finding that Plaintiff had no severe impairment or combination of impairments. Tr. 49. In reaching this conclusion, the ALJ considered that Plaintiff's vision was near normal in September 2006, despite evidence of some diabetic retinopathy. Tr. 49. Furthermore, while EMG and nerve conductive tests performed in July 2004 showed peripheral neuropathy, there was no root compression and Plaintiff's ability to perform basic work related activities was not limited. Tr. 49-50. Moreover, the ALJ noted that medical evidence of record showed that

9

Plaintiff experienced worsening peripheral neuropathy, developed balance problems, and additional difficulties related to blood sugar control, but that the evidence was from 2009. Tr. 50. Dr. Gandotra's opinions regarding Plaintiff's ability to do work related activities and her inability to function without the help of family members were from 2009 and 2010, and thus failed to demonstrate Plaintiff's disability prior to her date last insured. Tr. 199-201, 210-89, 347-60.

### V. DISCUSSION

Plaintiff contends in this Appeal that the ALJ's decision erred in two (2) ways. First, Plaintiff argues that the ALJ erred in step two (2) by finding that Plaintiff did not have any severe impairments prior to December 31, 2007, her date last insured. Specifically, Plaintiff argues that her combination of impairments was more than a slight abnormality and thus was severe under step two (2). As mentioned above, for evidence to be deemed "substantial," it must be more than a mere scintilla, *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 217 (1938), but may be slightly less than a preponderance. *Stunkard v. Sec'y of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988). Here the ALJ's decision, and more specifically his determination that Plaintiff's impairment or combination of impairments were not severe, was supported by substantial evidence. The ALJ's determination took into consideration Plaintiff's test results, physicians' opinions and physical assessments, and Plaintiff's subjective statements and complaints.

If the ALJ concludes that certain testimony is not credible, he must indicate the basis for that conclusion in the decision. *See Cotter v. Harris*, 642 F.2d 700, 705-6 (3d Cir. 1981). In his decision, the ALJ noted that medical evidence described Plaintiff's worsening peripheral neuropathy, developing balance problems, and increasing difficulties with blood sugar control.

Tr. 50.  Importantly, however, the ALJ explained that he did not consider this evidence credible because it was from 2009 and outside of the period at issue.  Tr. 50.  Moreover, the ALJ noted that evidence existing from the period at issue indicated that there was no root compression and that Plaintiff's peripheral neuropathy did not limit her ability to perform basic work related activities.  Tr. 49-50.  Additional support comes from the fact that Plaintiff continued working until October 2006.  Tr. 50.

In order to prove that an impairment or combination of impairments was "severe," Plaintiff was required to prove with medical evidence that her impairments "significantly limit[ed] [her] physical or mental ability to do basic work activities . . . ."  20 C.F.R. § 404.1520(c).  No physician or test indicated that Plaintiff was unable to perform basic work activities during the period at issue.  Plaintiff had the burden to prove that she was disabled during such time, but she failed to provide sufficient evidence regarding her impairment(s) and limitations.

While certain reports from Dr. Gandotra and Dr. Mian indicate that Plaintiff first saw these physicians for her ailments as early as 2004, these reports do not indicate that the impairments alleged to have prevented Plaintiff from working were present during the period at issue: June 1, 2006, to December 31, 2007.  Although "[r]etrospective diagnosis of an impairment, even if uncorroborated by contemporaneous medical records, but corroborated by lay evidence relating back to the claimed period of disability, can support a finding of past impairment," Plaintiff did not provide lay evidence that related back to the period at issue. *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 547 (3d Cir. 2003).  Instead, she provided reports detailing subjective symptoms of which she complained, without supportive medical findings or physician opinion evidence.  While the Court is sympathetic to Plaintiff's persistent health

11

issues, there was not enough evidence of a severe impairment during the period at issue for the ALJ to grant DIB.  Therefore, substantial evidence supports the ALJ's conclusion that Plaintiff did not have a severe impairment or combination of impairments.

Second, Plaintiff alleges that the ALJ erred in failing to assess Plaintiff's credibility and subjective complaints of pain.  Plaintiff points to her testimony at the hearing on January 12, 2011, and follow-up visits to the doctor, which detailed her subjective complaints of pain and other symptoms.  Tr. 60-71.  However, in assessing the credibility of subjective complaints, "[n]o symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, *unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment(s)* that could reasonably be expected to produce the symptoms."  SSR 96-7P (S.S.A. July 2, 1996) (emphasis added).

Contrary to Plaintiff's contentions, the medical evidence for the relevant time period does not support her testimonial complaints of pain or other symptoms.  Plaintiff stated in her January 12, 2011, testimony that at times in 2006: she was unable to work because of her diabetes; she was falling frequently; she could stand for ten (10) to fifteen (15) minutes at a time and sit for twenty (20) minutes at a time; she was able to walk for five (5) minutes without a problem; she had blurry vision about every ninety (90) minutes lasting more than twenty (20) minutes or an hour; she had trouble sleeping; and her pain was a five (5) out of ten (10).  Tr. 60-71.  However, there is substantial evidence to support the ALJ's finding that relevant medical testing from the period at issue showed diabetic retinopathy and some peripheral neuropathy, but near-normal vision and no root compression.  Tr. 347-48, 365.

Dr. Gandotra's medical records describe Plaintiff's subjective complaints during the period at issue, including: numbness and paresthesia of legs on August 2, 2004; worsening pain in feet on May 10, 2005; numbness in feet on July 11, 2005; headaches on September 1, 2006; and paresthesia but no joint problems on November 30, 2007.  Tr. 383-92.  Similarly, Dr. Mian's medical records from July 8, 2004, reflect Plaintiff's complaints of numbness and paresthesia of both feet and legs, but also detail that her walking was normal.  Tr. 195.  However, there remains substantial evidence to support the ALJ's decision that Plaintiff's treatment records and opinion evidence failed to demonstrate her disability prior to her date last insured.  Despite the subjective complaints recorded by Plaintiff's physicians, Plaintiff failed to provide adequate evidence based on medical signs and laboratory findings that her symptoms demonstrated "the existence of a medically determinable physical or mental impairment(s)" and accordingly rendered her unable to work.  SSR 96-7P (S.S.A. July 2, 1996).  As such, this Court must affirm the decision of the Commissioner.

### VI. CONCLUSION

For the foregoing reasons, the Court concludes that substantial evidence supports the ALJ's decision denying Plaintiff DIB benefits.  Therefore, the Court affirms the final decision of the Commissioner.  An appropriate Order accompanies this Opinion.


Dated: July 9, 2014                             /s/ Joel A. Pisano
                                                JOEL A. PISANO
                                                United States District Judge